

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 7, 2008**             **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| JNS AVIATION, LLC, | § | CASE NO. 04-21055-RLJ-7 |
| | § | |
| Debtor | § | |

___

| | | |
|---|---|---|
| NICK CORP., | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 04-2028 |
| | § | |
| JNS AVIATION, INC. aka JNS AVIATION | § | |
| GROUP, LLC, JNS AVIATION, LLC, | § | |
| JNS AIRCRAFT SALES, LLC, | § | |
| J. MALCOLM SHELTON, Individually, and | § | |
| JAMES N. SHELTON, Individually | § | |
| | § | |
| Defendants | § | |

**MEMORANDUM OPINION AND ORDER**

The Court considers the parties' post-trial motions, specifically two motions by the

defendants entitled (1) "Defendants' Rule 9023 Motion for New Trial or in the Alternative, Rule

9023 Motion to Alter or Amend Judgment" ("Defendants' Motion for New Trial") and (2) "Motion to Amend, Correct, and Clarify the Judgment" (the "Motion to Amend Judgment"), and the plaintiff's "Motion for New Trial." A hearing on these motions was held February 11, 2008.

With respect to the Defendants' Motion for New Trial, the Court denies all relief requested by the motion.

With respect to the plaintiff's, Nick Corp.'s, Motion for New Trial, the Court grants Nick Corp.'s request that the Court reconsider its denial of Nick Corp.'s claim of fraud and fraudulent inducement against defendant James N. Shelton and issues findings and conclusions on such claim.

The Court grants, in part, the Defendants' Motion to Amend Judgment.

The Court makes the following additional findings and conclusions which, where necessary, correct and supersede any conflicting findings and conclusions contained in the Court's Memorandum Opinion of September 26, 2007 (the "Memorandum Opinion"):

**Defendants' Claim that Nick Corp. Lacks Standing**

1. With respect to the assertion in Defendants' Motion for New Trial that plaintiff Nick Corp. lacks standing to bring the veil-piercing claims as such claims belong to the bankruptcy estate, the Court submits, in addition to the findings and conclusions contained in the Memorandum Opinion, that it conducted a conference with counsel for the parties on December 5, 2007, to address the form of the judgment submitted in connection with the Memorandum Opinion and whether the judgment should run in favor of the plaintiff Nick Corp. or the bankruptcy estate. Kent Ries, the chapter 7 trustee, stated unequivocally at such conference that he did not consider the estate to own the veil-piercing claims as they relate to Nick Corp.'s prior

breach of contract claim against JNS Aviation, Inc., which, in turn, resulted in the judgment it obtained in the Delaware federal court. Ries stated that the judgment should *not* run in favor of the bankruptcy estate. This is consistent with the posture taken by Ries at trial of this adversary proceeding and with statements he made in open court on the matter. The Court called the post-trial conference because the parties had not raised the issue of ownership of the veil-piercing claims with the Court for consideration. The Court had previously instructed Ries, as trustee, to either administer or abandon the claims asserted by Nick Corp. in this adversary proceeding. Ries filed a pleading with the Court reflecting his intent to administer such assets and then proceeded to attempt to settle the claims. Again, however, adding some confusion to the process, Ries submitted that he was settling the claims that "he had" and was not attempting to settle any claims held by Nick Corp. Ries did not consider the estate as owning the veil-piercing claims as a means to collect on the judgment held by Nick Corp. against JNS Aviation, LLC; he did not in fact pursue such claims, and, more important, he did not attempt in any manner to block Nick Corp.'s prosecution of such claims.

### Nick Corp.'s Fraud Claim

2. An action for fraud can be maintained on a person's promise to do an act in the future when, at the time the promise is made, there is no intention of performing the act and the promise was made with the intention, design and purpose of deceiving. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986).

3. A party's intent is determined at the time the promise was made; however, it may be inferred from the party's subsequent acts. *Id*. Intent is a fact question to be determined by the trier of fact based on the credibility of the witnesses and the weight given their testimony. *Id*.

4. In actions for false-promise fraud, it is important to distinguish those cases in which a plaintiff was induced to enter into a contract by a promise that the defendant had no intention of keeping at the time she made it and those cases in which the defendant made a promise with intent to perform at the time she made it but later changed her mind; otherwise, every breach of contract would constitute an action for fraud. *King v. Wise*, 282 S.W. 570, 573 (Tex. Civ. App. 1926).

5. In determining a defendant's intent, the mere fact that the party failed to perform is no evidence of his intent not to perform when the promise was made, but it is a factor to be considered along with all other factors. *Spoljaric*, 708 S.W.2d at 435. Two other factors courts have considered relevant are (1) the defendant having denied making the promise, *Stone v. Williams*, 358 S.W.2d 151, 155 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.), and (2) the defendant having made no pretense of performance, *Chicago, T. & M. C. Ry. Co. v. Titterington*, 84 Tex. 218, 223, 19 S.W. 472, 474 (1892).

6. Proving a party's intent not to perform at the time the promise is made must be done by circumstantial evidence, but even "'[s]light circumstantial evidence' of fraud, when considered with the breach of promise to perform, is sufficient to support a finding of fraudulent intent." *Spoljaric*, 708 S.W.2d at 435 (quoting *Maulding v. Niemeyer*, 241 S.W.2d 733, 738 (Tex. Civ. App.—El Paso 1951) (original proceeding)).

7. In *Susanoil, Inc. v. Continental Oil Co.*, the court of appeals recognized the following principle:

> 'One who having made a representation which when made was true or believed to be so remains silent after he has learned that it is untrue and that the person to whom it is made is relying upon it in a transaction with him is morally and legally in the

same position as if he knew that his statement was false when made.'" 519 S.W.2d 230, 236 n. 6 (Tex. Civ. App.—San Antonio 1975, writ ref'd n.r.e.) (quoting Restatement of Torts § 551(2) cmt. f). The court explained that those who fit either description, those who learned their originally-true representation became untrue after it was made or those who knew their statement was false when made, have a duty to disclose that information to those relying on the original representation before the closing of the transaction. *See id*.

8. In *Oliver v. Rogers*, the plaintiffs attempted to cite *Susanoil* for the proposition that "even if a party intends to do as it promises when it makes the promise, if circumstances change so that the promising party knows that it no longer intends to keep the promise, failure to disclose the changed circumstances to the party to whom the promise was made constitutes fraud." 976 S.W.2d 792, 803-04 (Tex. App.—Houston [1st Dist.] 1998). The court declined to extend the *Susanoil* holding that far pointing out that, in fact, the rule in *Susanoil* was held to apply "*before* closing the transaction." *Id*. at 804 (quoting *Susanoil*, 519 S.W.2d at 236).

9. Once it is established that a defendant had no intention of performing his promise at the time it was made and that, further, he breached his duty to disclose the misrepresentation before closing the transaction, it becomes necessary to determine who may hold the defendant liable for his deceit.

10. In Texas, "fraud jurisprudence has traditionally focused not on whether a misrepresentation is directly transmitted to a known person alleged to be in privity with the fraudfeasor, but on whether the misrepresentation was intended to reach a third person and induce reliance." *Ernst & Young, L.L.P. v. Pacific Mutual Life Insurance Co.*, 51 S.W.3d 573, 578 (Tex. 2001). In fact, in *Ernst & Young*, the Texas Supreme Court disapproved of *Kanon v.*

*Methodist Hospital*, 9 S.W.3d 365, 372 (Tex. App.—Houston [14th Dist.] 1999, no pet.), insofar as it suggested that privity is required to establish fraud. *Id.* at 580.

11. In *Ernst & Young,* the Texas Supreme Court held that Texas fraud jurisprudence is consistent with the "reason to expect" standard in section 531 of the *Restatement* which holds, in essence, that "a person who makes a misrepresentation is liable to the person or class of persons the maker intends or 'has reason to expect' will act in reliance upon the misrepresentation." *Id.* (quoting Restatement (Second) of Torts § 531 (1977)). In describing how the *Restatement's* comments illustrate the narrow scope of the reason-to-expect standard, the Texas Supreme Court noted that:

> [e]ven an obvious risk that a misrepresentation might be repeated to a third party is not enough to satisfy the reason-to-expect standard; rather, the alleged fraudfeasor must 'have information that would lead a reasonable man to conclude that there is *an especial likelihood* that it will reach those persons *and will influence their conduct*.'

*Id.* at 580 (quoting Restatement (Second) of Torts § 531 cmt. d (1977)).

12. Merely proving that the plaintiff's reliance is especially likely and that a defendant intends or has reason to expect that his representation will reach someone who will rely upon it is insufficient to hold him liable for fraud. *Id.* It must also be shown that the plaintiff suffered pecuniary harm in the type of transaction the defendant contemplated. *Id.*

13. The Court found that the Guaranteed Repurchase Provision meant that Nick Corp. had to offer JNS Aviation, LLC the opportunity to act as an agent in connection with the purchase by Nick Corp. of a "follow-on" aircraft. The Court further found that Jim Shelton was aware of, and knew the meaning of, the provision and that his attempt to construe the provision to mean that Nick Corp. had to purchase a "follow-on" plane from JNS Aviation, LLC was an

after-the-fact, self-serving interpretation. In addition, the Court found that the Guaranteed Repurchase Provision induced Lopardo, at least in part, to enter into the Purchase Agreement.

14. The Court has found that JNS Aviation, LLC was in the same financial condition in early 2001 as it was in late 2001, before and after the sale of the airplane – in short, that JNS Aviation, LLC did not have readily available funds with which to repurchase the aircraft.

15. Defendant Jim Shelton knew, before the closing of the transaction, that JNS Aviation, LLC would not honor the Guaranteed Repurchase Provision. He, therefore, had a duty to disclose such material fact to Nick Corp. Because Shelton failed to disclose this material fact, and because Shelton knew before the closing of the transaction that Nick Corp. was relying on the Guaranteed Repurchase Provision, Nick Corp. was induced into purchasing the airplane on the basis of the false promise.

16. Nick Corp.'s claim of fraud against defendant Jim Shelton will be granted.

17. Though Jim Shelton's fraud arises in the context of a contract, the Court looks to tort damages to measure the damages to be awarded. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

18. The measure of damages is the difference between the amount Nick Corp. paid and the value Nick Corp. received. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984) (the defrauded party recovers for the actual injuries suffered, which is measured by "the difference between the value of that which he has parted with, and the value of that which he has received"). Nick Corp. paid $1,903,748 when it purchased the plane in May of 2001 and sold the plane in March of 2005 for $1 million. The difference is $903,748, which Nick Corp. submits is the proper measure of damages for Jim Shelton's fraud. The Court disagrees. A proper

measure of damages should reflect the benefit Nick Corp. derived from its use of the plane, as well as enhancements made to the plane by Nick Corp. Accordingly, the Court concludes that the difference of $903,748 should be reduced by the flight hours, which was 358.1 hours, multiplied by $500 per flight hour – the $500 per hour multiplier coming from the Guaranteed Repurchase Provision, which is the best evidence of the value of the benefit received by Nick Corp. Therefore, the amount of the benefit Nick Corp received from use of the plane is $179,050. In addition, Nick Corp. paid $73,000 for enhanced avionics which improved the plane. The reduction for flight hours and the increase for the avionics are consistent with Nick Corp.'s proof of claim that is filed in this case. The resulting damage amount is $797,698.

19. The Court concludes that Jim Shelton's conduct does not justify an award of exemplary damages. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1983) (Exemplary damages are available if the fraudfeasor demonstrated a conscious indifference for the rights of another or if there is a finding of intent to harm.)

### Correction of Judgment Amount on Veil-Piercing

20. With respect to the judgment that has been entered on Nick Corp.'s veil-piercing claim, the defendants oppose the amount of the judgment to the extent it includes (i) an award of $73,000 for avionics added to the aircraft by Nick Corp., (ii) the continued accrual of interest after the filing of JNS Aviation, LLC's bankruptcy case, and (iii) an amount of $5,162.60 that was added to the judgment in error. The Court denies defendants' objections (i) and (ii) and sustains objection (iii).

21. Nick Corp. spent $73,000 on avionics installed in the aircraft. Nick Corp. credited its use of the plane by subtracting the value of its flight hours at $500 per hour. It is fair and

reasonable to include its out-of-pocket expenses for an improvement to the plane.

22. With respect to the charging of interest post-petition, the Court agrees in principle with the defendants' argument that their liability should not exceed the debt owed Nick Corp. by JNS Aviation, LLC. Indeed, the Court has held that the issue of such liability as between Nick Corp. and JNS Aviation, LLC cannot, under principles of res judicata, be relitigated. However, the defendants fail to recognize that JNS Aviation, LLC has not received a discharge in this case. While post-petition interest on the debt does not continue to accrue as against the bankruptcy estate, the Court can find no reason why post-petition interest would not continue to accrue as against JNS Aviation, LLC on a debt that is not discharged. *See* 4 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY, § 502.03[3][b][iii] (15th ed. 2007).

23. The Court agrees with defendants' contention that the amount of the judgment is incorrect due to a miscalculation of interest. The judgment reflects an amount on the veil-piercing claim of $866,663.40, as of November 30, 2007, with interest continuing to accrue daily in the amount of $53.58. This judgment amount, however, is premised upon an amount owing as of November 15, 2007, of $861,500.80. Assuming the latter calculation is correct and a per diem of $53.58, the final judgment amount exceeds what it should be.

24. The judgment should reflect, as of the date of entry of the judgment, the amounts attributable to principal, interest, and costs, respectively.

In accordance with the foregoing, it is hereby,

ORDERED that the relief requested by Defendants' Motion for New Trial is denied; it is further

ORDERED that the Defendants' Motion to Amend Judgment is granted, in part; it is

further

ORDERED that Nick Corp.'s Motion for New Trial is granted to the extent the Court reconsiders Nick Corp.'s claim of fraud and fraudulent inducement against Defendant James N. Shelton, and issues findings and conclusions on such claim; it is further

ORDERED that counsel for Nick Corp. shall submit an amended final judgment in accordance with the Court's findings and conclusions issued in this Memorandum Opinion and Order.

### End of Memorandum Opinion and Order ###